UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  08/06/2020
```

------------------------------------------------------------X
MONJASA A/S,                                    :
                                                :
                                Plaintiff,      :
                                                :        19-CV-6143 (VEC)
                -against-                       :
                                                :        MEMORANDUM
                                                :        OPINION AND ORDER
MUND & FESTER GMBH & CO. KG,                    :
*AS SUBROGEE OF* BRIESE SCHIFFAHRTS             :
GMBH & CO. MS KNOCK KG,                         :
                                                :
                                Defendant.      :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Monjasa A/S ("Plaintiff") seeks a declaratory judgment that it is not bound by an arbitration agreement entered into by its affiliate, Monjasa Lda. The latter agreed to supply fuel to a vessel, the M/V BBC SCOTLAND (the "Vessel"), on the order of the Vessel's time charterer, Angola de Navegacao, Lda ("ANNA"). Because of a collision between BBC SCOTLAND and the fueling vessel, Defendant Mund & Fester GMBH & Co. KG ("Defendant") (an insurance company standing in the shoes of BBC SCOTLAND's owner) served an arbitration demand on Plaintiff, seeking reimbursement of damages paid to the fueling vessel. As set forth below, there is no genuine dispute that neither Plaintiff nor Defendant was party to the fuel contract and the arbitration agreement provision therein. Accordingly, Plaintiff's motion for summary judgment is granted, and Defendant's cross-motion to compel arbitration is denied.

## I.     BACKGROUND

Defendant does not dispute Plaintiff's recitation of the facts. Def. Opp. Br. (Dkt. 25) at 2 ("For the purposes of this motion, Defendant does not dispute the facts as put forth by Plaintiff.").

The Monjasa Group consists of some 30 separately incorporated subsidiary and affiliated companies.  Pl. 56.1 Statement (Dkt. 22) ¶ 2.  Plaintiff and non-party Monjasa Lda are each Monjasa Group companies.  *Id.* ¶¶ 1, 3.  Neither company has any ownership interest in the other.  *Id.* ¶ 4.

On or about December 12, 2014, Monjasa Lda entered into a fuel contract (the "Contract") with Angola de Navegacao, Lda ("ANNA").  *Id.* ¶ 5.  All parties agree that the Contract consists, at minimum, of the Bunker Confirmation (Dkt. 20-1) and the Monjasa Terms (Dkt. 20-3) incorporated therein.  Pl. Br. at 6 (Dkt. 21); Def. Mem. (Dkt. 27) at 5–6; Pl. 56.1 Statement ¶¶ 12–15.  The Bunker Confirmation contains transaction-specific details such as product type, quantity, and price per unit to be provided by Monjasa Lda and purchased by ANNA.  Bunker Confirmation (Dkt. 20-1) at 1.  The Monjasa Terms contains the Monjasa Group's general terms and conditions for fuel contracts.  *See generally* Monjasa Terms (Dkt. 20-3).  Pursuant to the Contract, ANNA purchased 30 metric tons of marine fuel from Monjasa Lda to be supplied to the BBC SCOTLAND, which had been time chartered—not owned—by ANNA.  Pl. 56.1 Statement ¶¶ 5, 9.  The owner of BBC SCOTLAND did not receive a copy of the Bunker Confirmation.  *Id.* ¶ 14.

ANNA requested that the fuel be delivered to the Vessel via ship-to-ship transfer.  *Id.* ¶ 17.  In compliance with ANNA's request, Monjasa Lda sent M/V GOLDEN OAK, a bunker tanker, to deliver the fuel.  *Id*.  On December 19, 2014, the GOLDEN OAK was anchored at the transfer location awaiting the arrival of BBC SCOTLAND.  *Id*. ¶ 18.  BBC SCOTLAND collided with and damaged the GOLDEN OAK.  *Id.*  Due to the collision, the fuel transfer did not take place.  *Id.* ¶ 19.

On December 20, 2014, another bunker tanker, the DUZGIT VENTURE, successfully delivered fuel to BBC SCOTLAND on behalf of Monjasa Lda.  *Id.* ¶ 21.  DUZGIT VENTURE issued a fuel delivery receipt known as a bunker delivery note ("BDN"), as is customary after a fuel delivery.  *Id.* ¶ 22.  Although ANNA had negotiated and agreed to the Contract with Monjasa Lda, the BDN included the following statement: "Sale governed by terms and conditions between Vessel and Monjasa A/S, acting as principal."  BDN (Dkt. 20-4).

On December 23, 2014, Monjasa Lda sent an invoice to the ANNA employee who had ordered the fuel.  *Id.* ¶ 24; Pl. Decl., Ex. 2 (Dkt. 20-2); Pl. Decl., Ex. 6 (Dkt. 20-6).  The invoice was addressed to "M/V SCOTLAND and/or master and/or owners and/or charterers and/or managers and/or operators and/or [ANNA]."  Pl. 56.1 Statement ¶ 25.  On or about December 24, 2014, ANNA paid for the fuel.  *Id.* ¶ 28.  The invoice was never transmitted to Brise Schiffahrts Gmbh & Co MS Knock KG, the owner of BBC SCOTLAND, nor did the owner make any payment to any Monjasa Group company pursuant to the invoice.  *Id.* ¶¶ 26, 27.

As a result of the collision, the owners of the GOLDEN OAK sought damages from the owner of the BBC SCOTLAND.  Def. 56.1 Statement (Dkt. 26) ¶ 4.  Although Monjasa A/S was not invited to participate in the settlement discussions regarding damage to the GOLDEN OAK, on October 23, 2018, Defendant, the hull underwriter for the BBC SCOTLAND, demanded to be reimbursed by Monjasa A/S for the settlement amount.  Pl. 56.1 Statement ¶ 31.  Subsequently, on or about November 20, 2018, the BBC SCOTLAND interests and the GOLDEN OAK interests entered into a settlement agreement pursuant to which Defendant and the owners of the BBC SCOTLAND would pay the owners of the GOLDEN OAK $300,000 in settlement.  Def. 56.1 Statement (Dkt. 22) ¶ 5.

On June 12, 2019, Defendant sent an arbitration demand to Monjasa A/S.  Pl. 56.1

Statement ¶ 32.  Defendant sought indemnity for the amount paid to the owners of the GOLDEN

OAK to settle their claim and alleged that Monjasa A/S was liable for Defendant's damages

based on the Monjasa Terms,[1] citing the reference to Monjasa A/S as the principal on the BDN.

*Id*.  Defendant later revised its arbitration demand to include Monjasa Lda as well.  *Id.* ¶ 34.

On July 1, 2019, Plaintiff initiated this lawsuit as a declaratory action asserting that it is

not bound by the contract and that it was not acting as a principal for Monjasa Lda.  Complaint

(Dkt. 1).  Plaintiff further claimed that Defendant is not a party to the contract either and,

therefore, has no right to demand arbitration under the agreement between Monjasa Lda and

ANNA.  *Id*.  Plaintiff filed a motion for summary judgment on January 30, 2019.  Dkt. 18.

Defendant responded with a cross-motion for summary judgment on February 28, 2019.  Dkt. 23.

## II.    DISCUSSION

The parties do not dispute the validity of the arbitration agreement itself but instead

contest whether they are each properly bound by it.[2]  Because arbitration is a matter of contract,

"a court should be wary of imposing a contractual obligation to arbitrate on a non-contracting

party."  *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d

88, 97 (2d Cir. 1999).  "In admiralty, whether one party has authority to bind another to a

---

[1]     Under Clause 12(c) of the Monjasa Terms, the so-called "knock-for-knock" clause, the Buyer and Seller each assume all liability for any loss or damage to their respective vessels.  *See* Monjasa Terms at 4.

[2]     In a case procedurally identical to this one, the Second Circuit held that a plaintiff "seeking a declaratory judgment that it was not bound to arbitrate because it was not a party to [a marine fuel] contract" may properly invoke admiralty jurisdiction in federal court.  *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 62, 65–66 (2d Cir. 2012) ("If . . . the declaratory judgment defendant[] had instead brought an action as plaintiff to collect on the contracts, the district court unquestionably would have had admiralty jurisdiction.  This declaratory judgment action is the mirror image of that suit, and the district court thus had admiralty jurisdiction here too."); *see also* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.").

4

maritime contract is a question of general maritime law." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 71 (2d Cir. 2012) (citations omitted).

"An agent can have *actual authority*, meaning explicit permission from the principal to act on its behalf, or *apparent authority*, by which the agent can affect the principal's legal relations with a third party when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Id.* (emphasis in original) (cleaned up). "[T]he existence and scope of an agency relationship can be resolved as a matter of law only if: (1) the facts are undisputed; or (2) there is but one way for a reasonable jury to interpret them." *Id.*

Given the procedural posture of this case, agency is an affirmative defense that must be proven by the defendant, who seeks to bind a person (who otherwise would be a non-party) to an agreement. *Id.* at 72. "While agency is usually an element of the plaintiff's case-in-chief, in this declaratory judgment action [Plaintiff] denies it is a party to any contract with [Defendant]. Strictly speaking, that is true—[Plaintiff] and [Defendant] never had any contact at all. But [Defendant] asserts that [a non-party] with whom it did have a contract[] was acting on [Plaintiff's] behalf. Thus, to defend against [Plaintiff's] claims and preserve its right to proceed in arbitration, [Defendant] must prove its affirmative defense—that [the non-party] is [Plaintiff's] agent." *Id.* Put differently, Defendant bears the burden of showing that Monjasa Lda was acting as Monjasa A/S's agent when Monjasa Lda entered into the Contract. Defendant further bears the burden of proving that it is itself a party to the Contract, despite not being directly involved in either the negotiation or execution of the Contract.

As discussed below, the undisputed facts in the record, even when viewed in Defendant's favor, are insufficient to establish an agency relationship binding Plaintiff to arbitration and also

inadequate to show that Defendant was party to the Contract.  *See Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 859 (2d Cir. 1985) ("[W]hen ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." (citation omitted)).  Plaintiff's motion for summary judgment is therefore granted, and Defendant's cross-motion is denied.

### A.  Monjasa A/S's Motion for Summary Judgment

Defendant may compel Plaintiff to arbitrate only if both are bound by or have rights pursuant to the Contract.  Therefore, Plaintiff's motion for summary judgment must be granted if there is no genuine dispute that (a) there was no agency relationship between Monjasa Lda and Monjasa A/S or (b) Defendant is not entitled to invoke the Contract.  Plaintiff's motion prevails on both grounds.

### 1.  Monjasa Lda did not have authority to act as Monjasa A/S's agent.

There is no dispute that Monjasa A/S did not negotiate or enter into the fuel contract on its own behalf.  The only question is whether Monjasa A/S became bound, through agency principles, when Monjasa Lda entered into a bunker contract with ANNA, the time charterer.  On the issue of Monjasa Lda's status as an agent, Defendant relies exclusively on the BDN, which referred to Monjasa A/S as a principal.  *See* Def. Opp. Br. at 2–3.  The BDN, however, falls short of establishing any kind of agency authority.

Federal maritime law has adopted general agency principles.  *See Garanti*, 697 F.3d at 73 (citing *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980)).  "Agency can result from 'actual' or 'true' authority, which can be either express or implied, or 'apparent' authority, which results 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'"  *ING Bank N.V. v.*

*Temara*, 203 F. Supp. 3d 355, 363 (S.D.N.Y. 2016) (citing Restatement (Third) of Agency §§ 1.01, 2.01, 2.03 (2006)), *aff'd sub nom. ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511 (2d Cir. 2018).  The BDN, standing alone, cannot establish either actual or apparent authority.

Actual authority is created by the principal's manifestations of intent towards the agent. *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) ("[T]he power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.") (quoting Restatement (Second) of Agency § 7 cmt. a (1958) (internal quotation marks omitted).  "The extent of the agent's actual authority is interpreted in light of all circumstances attending those manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware." *Peltz v. SHB Commodities, Inc.,* 115 F.3d 1082, 1088 (2d Cir. 1997).  Manifestations of an actual principal-agent relationship may be express or implicit, but "[i]n either case, it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *Minskoff*, 98 F.3d at 708 (quoting Restatement (Second) of Agency § 7 cmt. b (1958)); *Ferrostaal, Inc. v. M/V SEA BAISEN*, No. 02-CV-1900, 2004 WL 2734745, at *3 (S.D.N.Y. Nov. 30, 2004) (same).

Here, the record is entirely devoid of any evidence as to the relationship or interactions between Monjasa A/S and Monjasa Lda, whether specific to this transaction or with regard to other similar transactions.  Despite having spent several months in fact discovery, Defendant has not uncovered any evidence of any action taken by Monjasa A/S.  Accordingly, there is no evidence in the record from which actual authority, whether express or implied, could be

inferred. *See Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 702–03 (2d Cir. 1990) (rejecting theory of actual agency because no evidence of any "written or spoken words or other conduct of the principal which, reasonably interpreted, cause[d] the agent to believe that the principal desire[d] him so to act on the principal's account" ); *cf. Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 664–65 (2d Cir. 1964) ("Implied authority may be viewed as actual authority given implicitly by a principal to his agent or as a kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers.").

The BDN is not indicative of any action taken by Monjasa A/S.  It is instead a communication between and by DUZGIT VENTURE, which confirmed that the fuel was delivered, and ANNA, which confirmed that the fuel was received.  *See* BDN (Dkt. 20-4).  As such, the BDN is entirely unilluminating as to the nature of the relationship between Monjasa Lda, which is not mentioned at all on the BDN, and Monjasa A/S, which, according to the form language on the bottom of the note, was "acting as principal" of an unspecified agent.  *See id.*; *Ferrostaal*, 2004 WL 2734745, at *4 ("Even assuming that [purported agent's] ambiguous reference to its 'principals' was intended to include [Defendants], this allegation is insufficient as a matter of law to establish agency . . . because an alleged agent cannot establish actual authority through his own statements."); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1461–62 (2d Cir. 1995) ("The presence of a parent's logo on documents created and distributed by a subsidiary, standing alone, does not confer authority upon the subsidiary to act as an agent.").  Thus, even if DUZGIT VENTURE and Monjasa Lda intended to refer to Monjasa A/S as their principal, they could not have created an actual agency relationship through their actions alone.

Similarly, the reference to Monjasa A/S as a principal in the BDN is also insufficient to establish apparent authority, which hinges on acts taken by the alleged principal that were relied upon by the opposing party.  "[U]nder maritime law, apparent authority cannot be evidenced by statements of an agent alone."  *Garanti*, 697 F.3d at 73.  In *Garanti*, the purported agent held itself out as the "manager" for the purported principal; the Second Circuit nevertheless ruled that the agent's actions were "irrelevant" because the pertinent inquiry for apparent authority purposes is whether the *principal* held the agent out as such.  *Id*.  Here, the BDN was signed by the chief officer of the DUZGIT VENTURE, and there is no evidence of any action taken by Monjasa A/S that could have conveyed to ANNA or the Vessel's owner that either Monjasa Lda or the operator of DUZGIT VENTURE was an agent for Monjasa A/S.  There is also no evidence that Monjasa A/S authorized either Monjasa Lda or DUZGIT VENTURE to indicate on the BDN that Monjasa A/S was the principal, nor is there any evidence that there were communications between Monjasa A/S and either ANNA or the Vessel's owner.  *See Fletcher*, 68 F.3d at 1462 ("The plaintiffs offer no evidence that Kodak authorized or gave the appearance of having authorized the statements in the Atex/EPPS documents.  Atex's/EPPS's use of the Kodak logo is not a 'verbal or other act[ ] by a principal,' but rather, an act by the purported agent." (citation omitted)) (rejecting apparent agency theory).  Defendant's agency theory cannot survive summary judgment in the complete absence of relevant evidence.

Apparent authority also requires reliance, which Defendant cannot prove on the facts of this case.  *See id.* ("If there were evidence that the plaintiffs relied on these documents and if there were evidence that [the purported principal] uttered or authorized them, then there would be an issue of material fact as to the existence of apparent authority.  However, there is neither."); *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 251 (2d Cir. 1996)

("Because the doctrine of apparent authority is based somewhat on the theory of estoppel, proof of holding out, standing alone, does not suffice for recovery. There must be proof of reliance and change of position."). Even if the Court were to assume that Monjasa A/S authorized the BDN, the note was issued long after ANNA and Monjasa Lda became bound by the Contract and, in fact, after Monjasa Lda had performed its obligations under the Contract. Temporally, the note could not have affected the decision-making of either ANNA or the Vessel's owner. The note was merely proof of performance and existed outside of the contract formation process.

For those reasons, the Court concludes that there is no genuine dispute that Monjasa A/S is not bound by the Contract and, accordingly, cannot be compelled to arbitrate this dispute.

### 2. *Defendant cannot invoke the arbitration clause as a non-party.*

Defendant claims that it may invoke the arbitration provision of the Contract, even though the owner of the BBC SCOTLAND did not directly participate in the transaction, citing three alternative rationales: (1) the contract documents refer to the owner of the vessel as a party; (2) Defendant, as a non-signatory, can invoke the arbitration clause against a signatory based on the relatedness of the dispute to the agreement; and (3) Defendant was a third-party beneficiary of the fuel contract.[3] *See* Def. Br. at 3–15. As a non-signatory, Defendant bears the burden of establishing its right to compel arbitration under the Contract. *See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 370 (2d Cir. 1995) ("Empresa's claim succeeds only if it was a third-party beneficiary . . . . The burden of establishing this status rests

---

[3]   Defendant also argues that, because Monjasa Lda may be able to assert a maritime lien against the Vessel for any non-payment of authorized purchases of fuel, the owner of the Vessel was either a party to the Contract or acquired rights under the Contract. *See* Def. Br. at 13. A maritime lien, however, is asserted against a vessel itself as an *in rem* claim, 46 U.S.C. § 31342, and is a creature of statute. *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 519 (2d Cir. 2018) ("Maritime liens arise only by operation of law and not by contract."). The Court sees nothing in the statute that would create contractual rights in a vessel's owner; nor has Defendant explained why it would be appropriate to blur the distinction between *in rem* and *in personam* actions. *See* Def. Reply (Dkt. 30) at 9.

on Empresa, as the agreement makes no explicit reference to the company."). None of

Defendant's arguments floats.

To be sure, the Bunker Confirmation, the Monjasa Terms, and the BDN each refer to the

"owner" of the Vessel as a potential party. *See* Bunker Confirmation (Dkt. 20-1) at 1 ("For

Account: m/v BBC SCOTLAND master and/or owners and/or charterers and/or managers and/or

operators and/or Angolana de Navegação, Lda."); Monjasa Terms (Dkt. 20-3) at 2 ("Buyer

warrants that it is authorized by the Vessel's owners/operators to order the marine fuels delivered

to the Vessel and that it has provided a copy of these terms and conditions to the Vessel's owner

and/or Master."); BDN (Dkt. 20-4) ("For Account: Owner and/or Charters and/or Managers

and/or Operators and/or MV BBC Scotland."). Nevertheless, while those documents may evince

Monjasa Lda's intent to bind the owner of BBC SCOTLAND, there is no evidence that the

Vessel's owner (and by extension, Defendant, the subrogee) agreed to be so bound. First, the

record does not show that the owner was involved in the transaction in any way, whether by

selecting Monjasa Lda as the bunker supplier, or by negotiating the terms, or by paying for the

fuel. Nor does Defendant even attempt to argue that ANNA entered into the Contract as an agent

of the Vessel's owner.[4] Quite simply, any person drafting a contract could name anyone it wants

in the text as being bound—but any such term is meaningless unless the named counterparty

agrees.

---

[4] While the Monjasa Terms apparently required ANNA to warrant that it had authority to purchase the fuel and that it had provided the terms and conditions to the Vessel's owner, there is no evidence that ANNA in fact provided the terms to the Vessel's owner before agreeing to the Contract. *See Chios Island Shipping & Trading S.A. v. MGI Marine, LLC*, No. 11-CV-2766, 2013 WL 5945192, at *4 (holding that owner had no right under fuel contract even though bunker confirmation and invoice were addressed to "Master a/o Owner a/o Charterer a/o Operator a/o Manager a/o mv 'Chios Liberty' a/o Messrs Archer Daniels Midland" and "Master and/or owner and/or charterer and/or operator and/or manager of mv Chios Liberty," respectively). In fact, Defendant does not dispute Plaintiff's statement of material facts, which states that the owner of BBC SCOTLAND "did not receive a copy of the Bunker Confirmation issued to ANNA." Pl. 56.1 Statement ¶ 14.

Next, Defendant claims that Monjasa A/S should be estopped from avoiding arbitration. It invokes the principle that a signatory to an arbitration agreement may be compelled to arbitrate by a non-signatory, if the dispute sought to be arbitrated is "intertwined" with the agreement to which the signatory is a party. *See, e.g.*, *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (holding that plaintiff "as signatory, is estopped from avoiding arbitration with a non-signatory 'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed'" (quoting *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l*, Inc., 198 F.3d 88, 98 (2d Cir. 1999)). Because Plaintiff signed nothing, this principle is clearly inapposite, even if the arbitration demand is "intertwined" with the Contract.

Finally, no reasonable factfinder could conclude that the owner of BBC SCOTLAND was a third-party beneficiary of the fuel contract between Monjasa Lda and ANNA. A non-signatory cannot be a third-party beneficiary unless "both parties intended the agreement to benefit" the non-signatory. *See Empresa*, 56 F.3d at 370–71. Here, there is no evidence that the fuel was purchased for the benefit of the owner. As the Vessel's time charterer, ANNA effectively rented the BBC SCOTLAND for the length of the charter. *See Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 998 (1st Cir. 1983) ("The general scheme of a time charter is that the owner turns over a fully equipped ship to the charterer and operates the ship for the charterer's benefit being compensated by monthly hire."). ANNA needed fuel to get from Point A to Point B and procured fuel from Monjasa Lda for that purpose. The fuel was not purchased for the owner's use of the Vessel; the owner was, at best, indifferent to whether the BBC SCOTLAND sailed to another port or used any fuel at all for the duration of the time charter—the owner would have been paid under the time charter regardless. As such, the owner is as much a third-

party beneficiary to the time charterer's fuel contract as a landlord is to a tenant's Netflix subscription or electric bill.  *See, e.g.*, *Chios Island Shipping & Trading S.A. v. MGI Marine, LLC*, No. 11-CV-2766, 2013 WL 5945192, at *4 (S.D. Tex. Nov. 6, 2013) ("Citing no case law, Plaintiff argues, in essence, that, simply because the purchase involved the M/V Chios Liberty, Plaintiff, as the vessel's owner, was an intended beneficiary of the transaction.  On the contrary, while Plaintiff may, by virtue of owning the vessel, stand as an incidental beneficiary, this fact alone does not make Plaintiff an intended beneficiary." (citing *Maersk Line Ltd. v. Care*, 271 F. Supp. 2d 818 (E.D. Va. 2003))).

Defendant's argument that the Monjasa Terms' indemnity clause evinces the contracting parties' intent to benefit the Vessel's owner is misplaced.  Section 12(c) provides, in relevant part: "Buyer assumes all liability for any loss or damage to Buyer's Vessel or injury to the crew thereon caused by any condition of the Bunker Tanker or any fault of the Master or crew of the Bunker Tanker and Buyer shall indemnify and defend Seller against all such liability," and "Seller assumes all liability for any loss or damage to the Bunker Tanker or injury to the crew thereon caused by any condition of Buyer's Vessel or any fault of the Master or crew of Buyer's Vessel and Seller shall indemnify and defend Buyer against all such liability."  Monjasa Terms (Dkt. 20-3) at 4.  That so-called "knock-for-knock" provision arguably benefits both the Buyer and the Seller, but, under the facts of this case, the owner of BBC SCOTLAND is neither. Specifically, the "Buyer" is defined as "the party contracting to purchase, take delivery and pay for the Marine Fuels."  *Id.* at 1.  As previously discussed, the time charterer, not the owner, negotiated and entered into the Contract, received delivery of the fuel, and paid the invoice. Absent a valid agency theory, which Defendant does not argue, the owner was not in any sense

the "Buyer" of the fuel and therefore was not the intended beneficiary of the "knock-for-knock" clause.

For those reasons, Defendant's theories as to why it may invoke the Monjasa Terms are entirely unsupported by the record, and summary disposition is appropriate.

**B. Defendant's Cross-Motion for Summary Judgment**

Because the record cannot support a finding that either Plaintiff or Defendant is bound by the Contract, Defendant's cross-motion is denied.

**III.    CONCLUSION**

Based on the undisputed record before the Court, it is ordered and adjudged that neither Plaintiff Monjasa A/S nor Defendant Mund & Fester Gmbh & Co. Kg is a party to the arbitration agreement between Monjasa Lda and ANNA, and Plaintiff, therefore, is not required to accede to Defendant's arbitration demand.[5]  Accordingly, Plaintiff's motion for summary judgment is GRANTED; Defendant's cross-motion is DENIED.  The Clerk of Court is directed to terminate all pending motions and deadlines and close the case.

**SO ORDERED.**

Date:  **August 6, 2020**                                                     **VALERIE CAPRONI**
           **New York, New York**                                           **United States District Judge**

---

[5]       The Court does not opine on whether Defendant may compel Monjasa Lda to arbitrate or provide other relief, as Monjasa Lda is not a party to this action.